**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the<br>YELLOW LINE CASES<br>Arising out of the Events of Jan 12, 2015<br><br>LEAD CASE: *Glover et al. v. Washington Metropolitan Area Transit Authority*<br><br>THIS DOCUMENT RELATES TO:<br><br>CORTEZ CONTEE<br>301 Russell Avenue<br>Apt 418<br>Gaithersburg, MD 20877<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, (a/k/a "WMATA")<br>600 Fifth Street, NW<br>Washington, DC 20001-2693<br><br>Serve: SUSAN SERRIAN<br>    WMATA<br>    600 Fifth Street, NW<br>    Washington, DC 20001-2693<br><br>    Defendant. | **Case No.**_____**(TSC)(GMH)** |

**COMPLAINT**

COMES NOW Plaintiff Cortez Contee, by and through the undersigned counsel, and hereby files this Complaint against Defendant Washington Metropolitan Area Transit Authority ("WMATA"). In support hereof, Plaintiff states as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Cortez Contee is an individual who resides at the above address.

2. Defendant WMATA, a common carrier, is a public transportation entity authorized to do and which does business in the District of Columbia. Defendant WMATA maintains its principle place of business at the above address.

3. This Court has subject matter jurisdiction over this action pursuant to § 11-921 of the D.C. Code in that the matters alleged herein occurred in the District of Columbia.

4. This Court has personal jurisdiction over Defendant WMATA pursuant to § 13-422 and § 13-423 of the D.C. Code in that Defendant WMATA transacts business in the District of Columbia and caused a tortious injury in the District of Columbia by act and/or omission.

## FACTUAL ALLEGATIONS

5. Defendant WMATA was created when Congress in 1967 approved the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code §§ 9-1107.11 *et seq.*

6. By the express terms of the WMATA Compact, WMATA is liable for its negligent acts and/or omissions and those of its directors, officers, employees, and/or agents committed in the conduct of any proprietary function. D.C. Code § 9-1107.01(80). The provision of passenger transportation through the Metro rail system is a proprietary function pursuant to the WMATA Compact.

7. On or about January 12, 2015, at approximately 3:15 p.m., WMATA Train 302 ("Train") was traveling on the Metro Yellow Line toward Huntington, Virginia with over two-hundred passengers on board. The Train was owned and operated by Defendant WMATA.

8. At approximately 3:15 p.m., after leaving the L'Enfant Plaza Metro station, the Train encountered dense smoke in the tunnel and stopped approximately 800 feet from the

L'Enfant Plaza Metro station. After stopping, the rear of the Train was approximately 386 feet from the south end of the L'Enfant Plaza Metro station platform.

9. At all times relevant herein, smoke emanated from the tracks and/or subway tunnel and filled the Train, causing passengers of the Train to inhale the smoke and its contents.

10. At all times relevant herein, due to the volume and density of the smoke, passengers aboard the following train stopped just north of the subject Train ("the following train"), along with persons on the L'Enfant Plaza Metro station platform, were also exposed to and forced to inhale the smoke and its contents.

11. Plaintiff Cortez Contee was located in the middle car on the Yellow Line Train 302 and was a passenger and business invitee or simply a business invitee.

12. Upon information and belief, the smoke was caused by an electrical arcing event that took place on the Metro track approximately 1,100 feet ahead of where the Train encountered the smoke. The electrical arcing event occurred minutes prior to the Train encountering the smoke. The conditions leading to the electrical arcing event and the electrical arcing event itself were not investigated by WMATA prior to the Train encountering the smoke.

13. Upon information and belief, the electrical arcing event involved uncontained electrical current flowing between the rail's power cable system and the steel wall of the tunnel.

14. Upon information and belief, the electrical connections associated with the power supply to the third rail of the Metro track were improperly constructed, installed, inspected, maintained, and/or repaired and/or otherwise defective, allowing contaminants and/or moisture and/or other substances to enter the electrical components. This led to short circuiting which caused the electrical arcing event on January 12, 2015.

15. The electrical arcing event, described by the National Transportation Safety Board (NTSB) as "severe," caused significant damage to the tunnel near the L'Enfant Plaza Metro station, as shown by these photos:[1]





16. After encountering the smoke, the Train became disabled in the tunnel, without power and illuminated only by emergency lighting.

---

[1] National Transportation Safety Board, *Preliminary Report: WMATA Smoke and Electrical Arcing in Washington, DC*, January 16, 2015, *available at* http://www.ntsb.gov/investigations/accidentreports/pages/DCA15FR004_preliminary.aspx.

17. Passengers on the Train were instructed to remain on the Train and keep the Train doors closed because the Train would be returning to L'Enfant Plaza station in short order. These instructions were given repeatedly to passengers on the Train by WMATA employees, servants, and/or agents.

18. At approximately 3:16 p.m., WMATA Operations Control Center attempted to activate ventilation fans to evacuate and/or disperse the smoke from the section of the tunnel in which the Train was stopped. However, the fans failed to accomplish this and instead directed the smoke into the Train, exacerbating the density and volume of smoke to which passengers on the Train, the following train, and adjacent platforms were exposed.

19. Minutes later, at approximately 3:18 p.m., the District of Columbia Office of Unified Communications ("OUC") received a 9-1-1 call from a construction worker reporting smoke emanating from a Metro ventilation shaft roughly a half-mile south of the location of the stopped Train.

20. At approximately 3:22 p.m., the OUC received a 9-1-1 call from a WMATA supervisor reporting heavy smoke in the L'Enfant Plaza Metro station. WMATA informed the fire department that there was "heavy smoke, passengers having trouble breathing."[2]

21. At approximately 3:28 p.m., the OUC dispatched a "Metro Station Box Alarm," which dispatched a fleet of District of Columbia Fire and Emergency Medical Services Department ("FEMS") personnel and equipment, including rescue squads, ladder trucks, life support units, and multiple Engine Companies.

---

[2] THE WASHINGTON POST, *Timeline confirms Metro riders' accounts of wait for rescue on dark, smoke-filled train*, January 15, 2015, *available at* https://www.washingtonpost.com/local/trafficandcommuting/timeline-confirms-riders-accounts-of-long-wait-for-rescue-on-dark-smoke-filled-train/2015/01/14/9ed1237e-9c2f-11e4-bcfb-059ec7a93ddc_story.html.

22. At approximately 3:31 p.m., the first FEMS responders arrived at L'Enfant Plaza Metro station pursuant to the OUC dispatch. Due to deficiencies in WMATA's signal-boosting and signal-relaying equipment, which were not compatible with FEMS standards, the FEMS responders had to wait approximately 13 minutes—until 3:44 p.m.—before moving into the tunnel because they were awaiting assurance from WMATA that power to the electrified third rail had been discontinued.

23. The OUC began receiving 9-1-1 calls from passengers aboard the Train at approximately 3:33 p.m. These calls continued for several minutes, with frantic and frightened passengers inquiring as to whether help was on the way.

24. Due to delays caused by WMATA, FEMS responders did not reach the Train until approximately 4:00 p.m., at which time they began evacuating passengers.

25. One passenger suffered fatal injuries due to the smoke inhalation while onboard the Train. Approximately 86 additional passengers were transported to local hospitals and medical facilities for treatment.

26. Over the course of approximately forty-five (45) minutes, Plaintiff Cortez Contee was trapped in the smoke-filled environment before eventually being evacuated by FEMS personnel. During this time, Plaintiff Cortez Contee suffered severe difficulty breathing, respiratory distress, emotional distress, fear, terror, and other physical and emotional injuries.

27. At all times relevant herein, Defendant WMATA was the owner and operator of the Metro rail system, including the L'Enfant Plaza Metro station, the Train, and all tracks, tunnels, and relevant infrastructure connecting the L'Enfant Plaza Metro station and the Pentagon Metro station (collectively "Metro rail system").

28. At all times relevant herein, the Metro rail system was operated by WMATA employees, servants, and/or agents, who were acting within the course and scope of their employment and/or agency.

29. As a direct and proximate result of Defendant WMATA's negligence, as described herein, Plaintiff Cortez Contee suffered bodily injuries that have caused and will continue to cause physical pain and suffering. As a further direct and proximate result of Defendant WMATA's negligence, as described herein, Plaintiff Cortez Contee suffered and will continue to suffer fear, terror, anxiety, and emotional distress. As a further direct and proximate result of Defendant WMATA's negligence, as described herein, Plaintiff Cortez Contee has incurred and will continue to incur medical, therapeutic, and related expenses including lost wages.

30. The injuries and damages alleged herein were caused solely and proximately by Defendant WMATA's negligence without any contributory negligence on the part of Plaintiff.

## CAUSES OF ACTION

### COUNT I - Negligent Maintenance, Inspection, and Repair

31. Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if fully set forth herein.

32. At all times relevant herein, Defendant WMATA was responsible for the maintenance, inspection, and repair of the Metro rail system.

33. At all times relevant herein, Defendant WMATA had a duty to exercise reasonable care to make its Metro rail system reasonably safe for the public through reasonable inspection, maintenance, and repair of its Metro rail system.

34. At all times relevant herein, Defendant WMATA's duty included, but was not limited to, the following:

    a. Use of ordinary care to maintain the Metro rail system in a reasonably safe condition for the use of passengers/invitees including Plaintiff, consistent with the invitation extended by WMATA;

    b. Use of ordinary care to inspect the Metro rail system for defects which would interfere with Plaintiff's use of the Metro rail system consistent with the invitation extended by WMATA; and

    c. Use of ordinary care to repair defects in the Metro rail system which would interfere with Plaintiff's use of the Metro rail system consistent with the invitation extended by WMATA.

35. In breach of this duty, Defendant WMATA failed at all relevant times herein to maintain the Metro rail system in a reasonably safe condition for business invitees/passengers such as Plaintiff through reasonable inspection, maintenance, and/or repair. Defendant WMATA breached this duty in a number of ways, including but not limited to the following:

    a. By failing to use ordinary care in the inspection, repair, and maintenance of the electrical connections associated with the power supply to the third rail of the Metro track;

    b. By failing to use ordinary care in ensuring that the electrical system powering the third rail of the Metro track did not create an unreasonable risk of electrical arcing;

c. By failing to use ordinary care in the inspection, repair, and maintenance of the ventilation system in the section of the Metro tunnel between the L'Enfant Plaza Metro station and Pentagon Metro station;

d. By failing to use ordinary care to update, calibrate, inspect, repair, and maintain its radio and communication systems in accordance with FEMS requirements and/or in a manner that would facilitate a reasonably timely emergency response to dangerous conditions in the Metro rail system;

e. By failing to use ordinary care to equip the Train, the following train and other infrastructure in the Metro rail system with safety equipment to protect passengers in the event of emergencies and dangerous conditions in the Metro rail system; and

f. By failing to use ordinary care to inspect the Metro rail system for conditions that could lead to electrical arcing and repair any such conditions;

36. As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Cortez Contee was caused to inhale the smoke and its contents, and suffered injuries and damages as set forth above without any contributory negligence on the part of Plaintiff Cortez Contee.

### COUNT II - Negligent Creation of Defect

37. Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if fully set forth herein.

38. At all times relevant herein, Defendant WMATA had a duty to exercise reasonable care to ensure that it did not create a dangerous defect in the Metro rail system which

would interfere with Plaintiff's use of the Metro rail system consistent with WMATA's invitation.

39. In breach of that duty, Defendant WMATA, through act or omission, failed to exercise reasonable care to ensure that it did not create a dangerous defect in the Metro rail system and in fact did create a dangerous defect or defects in the Metro rail system. Defendant WMATA breached its duty in numerous ways, including but not limited to the following:

    a.    Failing to use ordinary care to ensure that it did not create a condition, through act or omission, that would cause an unreasonable risk of electrical arcing;

    b.    Failing to use ordinary care to ensure that its ventilation system in the tunnel between the L'Enfant Plaza Metro station and the Pentagon Metro station would act reasonably and as designed in the event of an electrical arcing event such as that which took place on January 12, 2015;

    c.    Failing to use ordinary care to properly train its agents, servants, and/or employees in the proper activation, use, inspection, repair, and maintenance of its ventilation system in the event of a fire or smoke emergency; and

    d.    Failing to properly maintain and/or update its signal-boosting and signal-relaying equipment in accordance with FEMS standards.

40. As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Cortez Contee was caused to inhale the smoke and its contents, and suffered injuries and damages as set forth above without any contributory negligence on the part of Plaintiff Cortez Contee.

## COUNT III - Negligent Response

41. Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if fully set forth herein.

42. At all times relevant herein, Defendant WMATA had a duty to respond in a reasonable and timely manner to a known dangerous condition in its Metro rail system in an effort to eliminate or mitigate the injuries to Plaintiff Cortez Contee, its business invitee and passenger.

43. In breach of that duty, Defendant WMATA failed to respond in a reasonable fashion and/or failed to take reasonable measures to allow FEMS personnel to respond in a timely manner and/or restricted FEMS personnel's ability to respond in a timely manner to a known dangerous condition in its Metro rail system, thereby causing or exacerbating Plaintiff's injuries and damages as described herein. Defendant WMATA breached this duty in a number of ways, including but not limited to the following:

    a. By failing to ensure that the electricity to the third rail of the Metro track was shut off in a timely manner;

    b. By failing to inform FEMS in a timely manner that electricity to the third rail of the Metro track was shut off;

    c. By failing to use ordinary care to update, calibrate, inspect, repair, and maintain its radio and communication systems in accordance with FEMS requirements and/or in a manner that would allow a reasonably timely emergency response to dangerous conditions in the Metro rail system;

    d. By failing to move the Train to a safe location in a timely manner after it first encountered smoke in the tunnel;

  e. By failing to use ordinary care to evacuate and/or facilitate the evacuation of passengers on the Train; and

  f. By failing to timely contact emergency services to alert them of a dangerous condition present in the Metro rail system.

44. As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Cortez Contee was caused to inhale the smoke and its contents, and suffered injuries and damages as set forth above without any contributory negligence on the part of Plaintiff Cortez Contee.

## **COUNT IV - Negligent Failure to Warn**

45. Plaintiff restates and re-alleges each of the above paragraphs of this Complaint as if fully set forth herein.

46. At all times relevant herein, Defendant WMATA had a duty to use ordinary care to warn passengers/business invitees such as Plaintiff of any unsafe condition present in the Metro rail system of which Defendant WMATA had actual knowledge.

47. At all times relevant herein, Defendant WMATA had a duty to use ordinary care to warn passengers/invitees such as Plaintiff of any unsafe condition present in the Metro rail system of which Defendant WMATA should have known through the use of ordinary care.

48. At all times relevant herein, Defendant WMATA knew or should have known through the use of ordinary care that electrical arcing was likely to occur and/or did occur, that such electrical arcing would create smoke, and that such smoke would create a dangerous condition to passengers.

49. At all times relevant herein, Defendant WMATA knew or should have known that the electrical connections associated with the power supply to the third rail of the Metro track

were improperly inspected, maintained, and/or repaired and/or otherwise defective, allowing contaminants and/or moisture and/or other substances to enter the electrical components, and that such condition created the potential for electrical arcing events such as that which occurred on January 12, 2015.

50. At all times relevant herein, Defendant WMATA knew or should have known that its ventilation systems in the tunnel connecting the L'Enfant Plaza Metro station and the Pentagon Metro station were improperly inspected, maintained, and/or repaired and/or otherwise defective and that such condition would fail to eliminate or mitigate passengers' smoke inhalation as a result of an electrical arcing event such as that which occurred on January 12, 2015.

51. At all times relevant herein, Defendant WMATA knew or should have known that its signal-boosting and signal-relaying equipment was deficient and not compatible with FEMS standards, thereby causing a dangerous condition to passengers in the event of an emergent situation in Metro tunnels such as that which occurred on January 12, 2015.

52. In breach of its duty, Defendant WMATA failed to warn Plaintiff Cortez Contee of a dangerous condition or conditions in its Metro rail system of which it knew or should have known through the use of ordinary care.

53. As a direct and proximate result of Defendant WMATA's negligence, Plaintiff Cortez Contee was caused to inhale the smoke and its contents, and suffered injuries and damages as set forth above without any contributory negligence on the part of Plaintiff Cortez Contee.

**WHEREFORE,** Plaintiff Cortez Contee respectfully requests a compensatory judgment against Defendant WMATA in an amount to be determined at trial by a jury, plus costs of suit, and such other and further relief as this Court deems just and proper.

Dated: October 21, 2016                                   respectfully submitted,

                                                          ASHCRAFT & GEREL, LLP



                                                          _____
                                                          Joseph T. Musso, Esq. (#996784)
                                                          Drew LaFramboise, Esq. (#1018140)
                                                          4900 Seminary Rd.
                                                          Suite 650
                                                          Alexandria, VA 22311
                                                          (703) 931-5500
                                                          jmusso@ashcraftlaw.com
                                                          dlaframboise@ashcraftlaw.com

                                                          Jerry Spitz, Esq. (#413137)
                                                          1825 K Street, NW
                                                          Suite 700

Washington, DC 20006
(202) 783-6400
jspitz@ashcraftlaw.com


COHEN & COHEN, P.C.

*[signature]*

_____
Kim Brooks-Rodney, Esq. (#405477)
1220 19th St., NW
Suite 510
Washington, DC 20036
T: (202) 955-4529
F: (202) 955-3142
kbr@cohenandcohen.net